GISKAN SOLOTAROFF & ANDERSON LLP
Jason L. Solotaroff
90 Broad Street, 10th Floor
New York, New York 10004
(646) 964-9640

BARKET, EPSTEIN, KEARON, ALDEA & LOTURCO LLP
Aida Leisenring, Esq.
666 Old Country Road, Ste 700
Garden City, NY 11530
(516) 745-1500

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

RONALD MYERS,

     Plaintiff,

  -against-            **COMPLAINT**

                  **JURY TRIAL DEMANDED**

INSPECTOR MARY CHRISTINE DOHERTY,
LIEUTENANT SEAN CONRY,
DEPUTY INSPECTOR JAMES FRANCIS KOBEL,
SERGEANT RICHARD BEARY, and the
CITY OF NEW YORK,

     Defendants.

-------------------------------------------------------------------X

  Plaintiff Ronald Myers, by his attorneys Giskan Solotaroff & Anderson LLP, for his complaint against Defendants Inspector Mary Christine Doherty, Lieutenant Sean Conry, Deputy Inspector James Francis Kobel, Sergeant Richard Beary, and the City Of New York, alleges as follows:

## NATURE OF THE ACTION

1

1. This is an action for race discrimination and retaliation in violation of the 14th Amendment of the Constitution of the United States pursuant to 42 U.S.C. §1983 and the New York City Human Rights Law ("NYCHRL").

2. Plaintiff Ronald Myers, an African American man, was a highly accomplished, decorated police officer and sergeant at the New York City Police Department ("NYPD").

3. In 2005, while Sgt. Myers was working in the Public Information unit of the NYPD, he objected to a racist comment by a fellow NYPD Sergeant, Defendant Mary Christine Doherty. Defendant Doherty immediately retaliated against Sgt. Myers by arranging for his transfer out of the prestigious assignment.

4. In 2012, Sgt. Myers was transferred to the Counterterrorism Bureau, where Defendant Doherty was a supervisor and thereafter Sgt. Myers's commanding officer. Defendant Doherty's harassment and retaliation against Sgt. Myers resumed. Defendant Doherty imposed unmerited discipline on Sgt. Myers, along with Sgt. Myers's direct supervisor, Lt. Sean Conry, unfairly downgraded his evaluations, and even barred Sgt. Myers, alone, from using a bathroom, used by other supervisors, because she herself used it.

5. On October 15, 2019, Defendant Doherty told Sgt. Myers that he would be transferred to a precinct assignment, which would end his hopes of advancement at the NYPD. Sgt. Myers responded that the transfer was discriminatory and retaliatory and filed a complaint of discrimination with the NYPD's Equal Employment Opportunity Division ("EEOD").

6. Despite the promise of the assigned EEOD investigator, Defendant Sgt. Richard Beary, that Sgt. Myers's complaint would be fully investigated, Sgt. Myers was not interviewed, and no such investigation was conducted.

7. On November 20, 2019, the investigation was closed by Defendant Captain James F. Kobel, the commanding officer of the EEOD, based on an alleged finding that there was no evidence of employment discrimination. Notably, in December 2020, Captain Kobel was relieved of his command for making racist, sexist and other offensive remarks on a social media site under a pseudonym. *See* https://abc7ny.com/nypd-officer-accused-of-prejudice-sexist-comments-online/7679612/.

8. After the investigation was closed, to avoid such a transfer, and to escape Defendant Doherty's harassment, Sgt. Myers was forced to retire from the NYPD on June 30, 2020. This retirement was five years prior to Sgt. Myers's intended retirement date and resulted in his loss of significant wages and pension benefits.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the claims made pursuant to the 42 U.S.C. §1983 pursuant to 28 U.S.C. §1343.

10. This Court has jurisdiction over the claims made pursuant to the NYCHRL pursuant to 28 U.S.C. §1367.

11. Venue is properly before this Court pursuant to 28 U.S.C. § 1391(b) as Plaintiff was employed in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

12. This Court has personal jurisdiction over the individual defendants because they are residents of New York and over the City of New York because it is a municipal corporation organized under the laws of New York.

## THE PARTIES

13. Plaintiff Ronald Myers is an African American man who is currently a resident of Southampton, New York.

14. Defendant Mary Christine Doherty is currently an inspector in the NYPD and is a resident of New York.

15. Defendant Sean Conry is currently a lieutenant in the NYPD and a resident of New York.

16. Defendant James F. Kobel is currently a deputy inspector in the NYPD and is a resident of New York.

17. Defendant Richard Beary is currently a sergeant in the NYPD and a resident of New York.

## THE FACTS

18. Ronald Myers joined the NYPD in 1995, graduated from the Police Academy in March 1996, and was assigned to the 28th precinct in Harlem.

19. During the next several years, Myers received multiple awards and commendations both from the NYPD and the community, including the NYPD's Meritorious Police Duty Medal and the Outstanding Police Service Awards from the Ministers of Harlem.

20. In February 2002, Myers was promoted to Sergeant and continued to receive multiple commendations, including Excellence Police Duty (EPD), perfect attendance for over 15 years, and Excellence Police Service (EPS). Among his assignments was Patrol Supervisor, Counterterrorism Strategies Specialist, Chemical and Biological Response Assessment Supervisor in the Disorder Control Unit, and Counterterrorism Tactical Response Team Supervisor,

4

21. In February 2005, Sgt. Myers received another prestigious assignment, to the Office of the NYPD Deputy Commissioner for Public Information, where he served as one of the spokespersons for the NYPD.

22. During Sgt. Myers's stint in Public Information, he worked with Defendant Doherty, who was also a sergeant at the time. Defendant Doherty made a number of remarks in Sgt. Myers's presence that denigrated the Black community.

23. On one day in June 2005, Sgt. Myers heard Defendant Doherty refer to a dog that had been involved in a shooting as a "ghetto dog." On this occasion, Sgt. Myers objected to Defendant Doherty's racist comment and when she rolled her eyes at his objection, Sgt. Myers told her she should have "more respect" for the Black community.

24. The next day, Chief Michael Collins, Sgt. Myers's supervisor, called Sgt. Myers into his office and questioned him about the conversation with Defendant Doherty. Collins then told Sgt. Myers he was being transferred, that Sgt. Myers had done nothing wrong, it was "politics," and that Sgt. Myers should go quietly. It was clear to Sgt. Myers that Defendant Doherty was responsible for the transfer. Defendant Doherty has significant connections with the NYPD administration that allowed her to never be assigned to patrol duty and which, on information and belief, enabled her to orchestrate Sgt. Myers's transfer.

25. Sgt. Myers was then transferred to the Manhattan South Task Force, where he had previously served.

26. In 2009, Sgt. Myers was promoted to Sergeant Special Assignment, which allows him to receive the pay increase equivalent to a lieutenant's pay rate.

27. On January 31, 2012, Sgt. Myers was transferred to the NYPD's Counterterrorism Bureau and assigned to the Lower Manhattan Security Coordinating Center. Sgt. Myers's supervisor was Lt. Kevin Lee. Defendant Doherty, who held the rank of Captain at the time, worked in the Bureau's Brooklyn office and was the Integrity Control Supervisor for the Counterterrorism Bureau.

28. At the Counterterrorism Bureau, Sgt. Myers served ably and effectively in several capacities: as a supervisor in the Suspicious Chemical and Biological Incidents Response unit, as a coordinator with state and federal counterparts to provide security on presidential and foreign dignitary visits to New York City, and as the primary counterterrorism liaison between the NYPD and the corporations and large businesses in lower Manhattan.

29. Despite Sgt. Myers's strong performance, he could not escape Defendant Doherty's harassment and retaliation.

30. In July 2012, Defendant Doherty came to the Lower Manhattan office and directed Lt. Lee to issue Sgt. Myers a disciplinary action known as a Command Discipline ("CD"). The basis of the CD was that Sgt. Myers's official vehicle had been towed while he was working. The vehicle, however, had been towed despite the NYPD placard being displayed on its dashboard and he was on official police business. This was not an uncommon occurrence in the Counterterrorism Bureau, but discipline was never imposed when it occurred. Sgt. Myers appealed the CD to his commanding officer in the Bureau, Deputy Inspector Anthony Serrino, who vacated it.

31. In May of 2014, Defendant Doherty replaced Deputy Inspector Serrino as Sgt. Myers's commanding officer.

32. In April of 2016, Sgt. Myers received his performance evaluation for 2015. Although Sgt. Myers had received fours and fives on a one to five scale during his tenure in Counterterrorism, and although his performance had not deteriorated, he received threes and fours on this evaluation. Sgt. Myers's direct supervisor, Defendant Lt. Sean Conry, indicated that Defendant Doherty was responsible for the lowered evaluations, but that Sgt. Myers should not "worry about it." Notably, Defendant Conry had given Sgt. Myers a far more positive evaluation the prior year.

33. The next year, 2017, Defendant Conry gave Sgt. Myers another less favorable review and again indicated that Defendant Doherty was responsible. When Sgt. Myers indicated that he wanted to appeal the evaluation, Defendant Conry discouraged Sgt. Myers from doing so and said that he would organize a meeting to try to deal with the situation.

34. At the meeting on June 17, 2017 between Defendant Doherty, Defendant Conry, and Sgt. Myers, Sgt. Myers was surprised to see a union delegate there. Defendant Doherty told Sgt. Myers that she was issuing him a CD for changing his schedule. This was despite the fact that white supervisors in the office routinely changed their schedules during this period and were not disciplined. Defendant Doherty threatened Sgt. Myers that she would bring him up on more serious "Charges and Specifications" if he did not accept the CD.

35. Sgt. Myers's union delegate advised him to accept the CD because the "Charges and Specifications" would be detrimental to his career, even if he were exonerated. Accordingly, Sgt. Myers accepted the CD. Defendant Doherty told Sgt. Myers he could either lose one month's overtime or accept a transfer out of Counterterrorism. Sgt. Myers decided to stay in Counterterrorism and lose the overtime.

36. On September 5, 2018, Defendant Doherty called Sgt. Myers into her office and told him that he could no longer use the bathroom that Defendant Doherty and other white supervisors used. When Sgt. Myers protested, Defendant Doherty castigated him, saying "I see you wearing bow ties and going to De Blasio fundraisers, you think you're something, you're nothing." Defendant Doherty then made a point of directing Sgt. Myers to perform non-work-related menial tasks for her.

37. On a daily basis, Defendant Doherty singled out Sgt. Myers for harassment, giving him hostile looks but otherwise making a point of ignoring him even though she was friendly with the white supervisors in the office.

38. Defendant Doherty also discriminated against the only other Black supervisor in her command, Lt. Damian Brooks. Lt. Brooks, who was assigned to the midnight tour, requested that he be moved to the day shift. Defendant Doherty said that it would not be possible unless he transferred out of her command, which Lt. Brooks agreed to do. Meanwhile, Defendant Doherty regularly accommodated white supervisors' requests for schedule changes.

39. On October 15, 2019, Defendant Doherty, along with Defendant Conry, informed Sgt. Myers that he was being transferred from his prestigious assignment at the Counterterrorism Bureau to a far less prestigious precinct assignment because, allegedly, an email Sgt. Myers had written was insufficiently detailed. Such a transfer would end Sgt. Myers's hopes of advancement at the NYPD and also adversely impact Sgt. Myers's chances of post-NYPD employment in corporate security.

40. Sgt. Myers stated that this was unjustified and recounted all the acts of misconduct that Counterterrorism personnel had engaged in without being transferred. Sgt.

Myers told Defendant Doherty that she had always had a problem with Black people and that she had never gotten over his objection to her racist comment many years ago. Sgt. Myers also said, sarcastically, "congratulations for getting rid of all of the Black supervisors in the unit."

41. Unbeknownst to Sgt. Myers, after the meeting, Defendant Conry contacted the NYPD's Equal Employment Opportunity Division ("EEOD").

42. An investigator from the EEOD then contacted Sgt. Myers and asked if Sgt. Myers wished to make a discrimination complaint. Sgt. Myers agreed and went to the EEOD office on October 16, 2019. Sgt. Myers filled out complaint paperwork, which included a short statement concerning Defendant Doherty's discriminatory conduct. An EEOD investigator, Defendant Sgt. Richard Beary, told Sgt. Myers that he would be interviewed, and that his complaint would be investigated fully.

43. However, Sgt. Myers was not interviewed, and no such investigation was apparently conducted.

44. On November 22, 2019, Sgt. Myers learned that Defendant Doherty had been promoted to Inspector. Given the NYPD policy that subjects of investigations are not promoted while the investigation is pending, it was apparent to Sgt. Myers that no good faith investigation was going to take place.

45. This was confirmed on November 26, 2019, when Defendant Beary sent an email to Sgt. Myers attaching a letter, dated November 20, 2019, from Defendant Captain James F. Kobel, the commanding officer of the EEOD, finding that the investigation of the complaint had determined that there was no evidence of employment discrimination.

46. Sgt. Myers emailed Defendant Beary asking about the purported investigation and about what evidence was considered. Defendant Beary did not respond.

47. Notably, in December of 2020, a year after Captain Kobel closed the investigation, Captain Kobel was relieved of his command for making racist, sexist, and other offensive remarks on a social media site under a pseudonym. *See* https://abc7ny.com/nypd-officer-accused-of-prejudice-sexist-comments-online/7679612/.

48. After the investigation was closed, Sgt. Myers, with no other options, decided to announce his retirement effective June 30, 2020, which enabled him to avoid a transfer.

49. Sgt. Myers did retire on June 30, 2020. This was five years prior to Sgt. Myers's planned retirement. Had Sgt. Myers worked until June 30, 2025, his pension benefits would be significantly greater.

50. Defendants' conduct has continued to adversely impact Sgt. Myers. In the last few months of his employment, he was told by a corporate security director of a large corporation that Defendant Conry had reported that the corporate security director should not associate with Sgt. Myers, who was "bad news." Without a positive informal recommendation from his former colleagues in Counterterrorism, Sgt. Myers's chances of obtaining suitable employment in the private sector are close to nil.

**FIRST CLAIM FOR RELIEF**
(Violation of Equal Protection Clause of the 14th Amendment Against Defendants Doherty, Conry, Kobel and Beary)

51. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

52. Defendants Doherty, Conry, Kobel, and Beary, acting under color of state law, violated Plaintiff's constitutional right to equal protection by discriminating against him based on his race and retaliating against him for his objection to race discrimination.

### SECOND CLAIM FOR RELIEF
(Race Discrimination in Violation of New York City Human Rights Law)

53. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

54. Defendants discriminated against Plaintiff on account of his race in the terms and conditions of his employment in violation of the New York City Human Rights Law.

### THIRD CLAIM FOR RELIEF
(Retaliation in Violation of the New York City Human Rights Law)

55. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

56. Defendants retaliated against Plaintiff on account of his opposition to race discrimination in the terms and conditions of his employment in violation of the New York City Human Rights Law.

### JURY DEMAND

Plaintiff demands trial by jury of all issues as of right by a jury.

**WHEREFORE**, Plaintiff demands judgment against Defendants:

A. Reinstating Plaintiff's employment and enjoining Defendant from harassing Plaintiff on the basis of his race and his opposition to race discrimination, in the terms and conditions

of his employment;

B.  Awarding Plaintiff lost compensation including the loss of value of Plaintiff's pension benefits;

C.  Awarding Plaintiff compensatory damages, including but not limited to damages for emotional distress;

D.  Awarding Plaintiff punitive damages;

E.  Awarding reasonable attorneys' fees, costs, and expenses; and

Granting such other legal and equitable relief to the Plaintiff as the Court may deem just and equitable.

Dated:   New York, New York
January 11, 2021

By:  _____/s/_____
Jason L. Solotaroff
GISKAN, SOLOTAROFF & ANDERSON LLP
jsolotaroff@gslawny.com
(646)964-9640
90 Broad Street, 10th Floor
New York, New York 10004
*Attorney for Plaintiff*

Aida Leisenring, Esq.
BARKET, EPSTEIN, KEARON, ALDEA &
LOTURCO LLP
666 Old Country Road, Ste 700
Garden City, NY 11530
T (516) 745-1500
*Attorney for Plaintiff*